Shalini Dogra (State Bar No. 309024)
*shalini@dogralawgroup.com*
**DOGRA LAW GROUP PC**
2219 Main Street, Unit 239
Santa Monica, California 90405
Telephone: (747) 234-6673
Facsimile: (310) 868-0170

George V. Granade (State Bar No. 316050)
*ggranade@reesellp.com*
**REESE LLP**
235 Peachtree Street Northeast, Suite 400
Atlanta, Georgia 30303-1400
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

Michael R. Reese (State Bar No. 206773)
*mreese@reesellp.com*
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Plaintiff Amanda Johnson-Zetterström and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

AMANDA JOHNSON-ZETTERSTRÖM, *individually and on behalf of all others similarly situated,*

Plaintiff,

v.

SEGAL USA INC.,

Defendant.

Case No. 2:26-cv-04005-FLA-PVC

**SECOND AMENDED CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Amanda Johnson-Zetterström ("Plaintiff" or "Johnson-Zetterström") brings this action individually and on behalf of all others similarly situated (the "Class," defined below) against Defendant Segal USA Inc. ("Defendant" or "Segal"). This Court has original subject matter jurisdiction over this putative class action based on the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). Plaintiff alleges on information and belief, except as to those allegations which pertain to her, which are based on personal knowledge, as follows:

## NATURE OF THE ACTION

1. This action relates to safety defects in Defendant's "Fun Twin Bed" for toddlers and children (the "Product"), which Plaintiff purchased from Defendant in 2025. The Product was designed with dangerous features including dangerously-sharp edges (the "Safety Defect"). As detailed below, Plaintiff alleges the Product is defectively designed due to the Safety Defect and that Defendant concealed and failed to disclose the Safety Defect. The Safety Defect caused physical injury to Plaintiff's three-year-old child which led to a doctor's visit and monetary damages.

2. Seeking to address Defendant's dangerous business practices and deceptive conduct, on behalf of herself and the putative Class, Plaintiff brings claims for: (1) strict products liability – design defect; (2) negligence; (3) violation of California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.* ("UCL"); (4) violation of California's Consumers Legal Remedies Act, CAL. CIV. CODE § 1750 *et seq.* ("CLRA"); and (5) fraudulent non-disclosure. She seeks monetary and injunctive relief.

## JURISDICTION AND VENUE

3. This Court has original subject matter jurisdiction over this proposed class action pursuant to the Class Action Fairness Act of 2005, under 28 U.S.C. § 1332(d). Because Plaintiff is a citizen of California and Segal is a citizen of New Jersey, at least one member of the plaintiff class is a citizen of a State different from Defendant. Further, Plaintiff alleges the matter in controversy is in excess of

$5,000,000 in the aggregate, exclusive of interest and costs. Finally, Plaintiff alleges "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

4. The Court has personal jurisdiction over Defendant as a result of Defendant's substantial, continuous, and systematic contacts with California, and because Defendant has purposely availed itself of the benefits and privileges of conducting business activities within California. Plaintiff's claims arise out of Defendant's conduct within California, including Defendant's sale of the Product subject to the Safety Defect to Plaintiff in California.

5. Venue lies in this Court because Defendant distributed, advertised, and sold the Product to Plaintiff in Los Angeles County, and Plaintiff's child suffered physical injury due to the Safety Defect in Los Angeles County.

6. Venue is proper in this county pursuant to California Civil Code section 1780(d) because Defendant distributed, advertised, and sold the Product to Plaintiff in Los Angeles County. Furthermore, in accordance with section 1780(d), Plaintiff has attached an affidavit to this Second Amended Complaint stating facts showing that this action has been commenced in a proper county for the trial of the action.

## PARTIES

### Plaintiff Amanda Johnson-Zetterström

7. Plaintiff Amanda Johnson-Zetterström is a resident of California who lives in Encino, California, in Los Angeles County.

8. Johnson-Zetterström purchased the "Fun Twin Bed" Product in California, in Los Angeles County, from Defendant via dadadababy.com for $349.00 on August 10, 2025. With the purchase, Johnson-Zetterström also received a "Fun Bed Trundle Box" for free.

9. Defendant's advertising and labeling of the Product did not disclose to Johnson-Zetterström that the Product was subject to the Safety Defect.

10. When purchasing the Product, Johnson-Zetterström reasonably

believed the Product to be safe to use for the purpose for which it was intended: a bed for toddlers and children.

11. In reality, the Product that Johnson-Zetterström purchased suffered from the Safety Defect, dangerously-sharp edges.

12. Johnson-Zetterström would not have purchased the Product or would have paid less for it if she had known it suffered from the Safety Defect.

13. Johnson-Zetterström would not have purchased the Product or would have paid less for it had Defendant not failed to mention (omitted) the existence of the Safety Defect in advertising and labeling the Product.

14. In reliance on Defendant's deceptive advertising practices regarding the Product, including Defendant's deceptive omission of the Safety Defect, Johnson-Zetterström bought a unit of the Product she otherwise would not have purchased or paid more for a unit of the Product than she otherwise would have been willing to pay.

15. Plaintiff paid for a safe Fun Twin Bed Product, but she received a Fun Twin Bed Product that suffered from the Safety Defect, dangerously-sharp edges. The Product that Johnson-Zetterström received was worth less than the Product for which she paid.

16. The Safety Defect injured Plaintiff's three-year-old child when Plaintiff was helping him to get into the bed to go to sleep. As shown in the picture below, Plaintiff placed her child's pillow by the footboard of the bed. As Plaintiff was helping her child get into the bed, he turned and hit his face on the dangerously-sharp edge of the brown footboard of the bed. Plaintiff's child was injured by one of the dangerously-sharp brown edges of the Product's footboard while getting into the Product in a foreseeable and ordinary manner. Plaintiff's child split his cheek due to the dangerously-sharp edge of the footboard and needed skin glue on his face for the injury.

17. Johnson-Zetterström suffered injury in fact and loss of money or

property as a result of Defendant's improper conduct. Plaintiff's damages include: (i) the full purchase price that Plaintiff paid for the Product or, alternatively, the price premium she paid for the Product on account of Defendant's deceptive omissions; (ii) the medical expenses she incurred as a result of the injuries her child sustained from the Product due to the Safety Defect; and (iii) income loss Plaintiff suffered when she had to take time off from work to take her son to doctors' visits (including the urgent care, PM Pediatrics of California), as well as to take care of him due to the injuries he suffered because of the Safety Defect.

18. Plaintiff would consider buying the Product again, but will be unable to rely on the Product's advertising or labeling without an injunction. Additionally, Plaintiff might purchase a unit of the Product again if she reasonably but erroneously believed the Product had been improved.

**Defendant Segal USA Inc.**

19. Defendant Segal USA Inc. is a corporation located at 24 West Railroad Avenue, Suite 110, Tenafly, New Jersey 07670.

20. Segal does business as "dadada" or "dadada Baby." *See* DADADA BABY, *Privacy Policy* (Nov. 5, 2024), https://dadadababy.com/pages/privacy-policy [https://perma .cc/MTR8-24G6].

21. Segal designs, manufactures, markets, distributes, and sells the Product throughout California and the United States.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### I. Defendant Designs, Manufactures, Markets, and Sells the Fun Twin Bed

22. Defendant is engaged in the business of designing, manufacturing, marketing, distributing, and selling the Product throughout California and the United States through its website, dadadababy.com. *See Fun Twin Bed with Safety Guardrails for Kids*, DADADABABY.COM (2026), https://dadadababy.com/products/fun-bed-twin-bed?variant=43891476562091.

//

23. An image of the Fun Twin Bed that Plaintiff purchased is below.



## II. The Fun Twin Bed Suffers from the Safety Defect

24. The Safety Defect is that the brown edges of the footboard and headboard of the Product are dangerously sharp.

25. On information and belief, the Safety Defect has existed in all units of the Product beyond the applicable statute of limitations.

26. The Safety Defect renders the Product dangerous for human use, especially when used as intended. Plaintiff and the Class members were exposed to risk of physical injury, including life-endangering consequences for their children, when using the Product with ordinary care.

27. The Safety Defect involves a sharp edge that presents a serious risk of laceration and avulsion injury, as demonstrated by Plaintiff's experience.

28. Plaintiff is informed and believes, and on that basis alleges, that the Safety Defect may have one or more causes.

29. The Fun Twin Bed continues to be sold throughout California and the United States with the Safety Defect.

## III. Defendant Knows about the Safety Defect and Has Not Fixed It or Taken Measures to Warn Consumers about It

30. At all relevant times, Defendant knew or should reasonably have known that the Products are made with the Safety Defect.

31. Defendant possesses specialized knowledge regarding the production of the Product and is in a superior position to know and learn about the Safety Defect that exists in the Product's design or manufacturing process.

32. Defendant knew and was aware, or should have known, before marketing and selling the Products that the Products were defectively designed and subject to the Safety Defect even when used by consumers as intended and instructed.

33. Upon information and belief, to date, Defendant has not taken action to remedy the Safety Defect in the Product.

34. Upon information and belief, Defendant has never sent out any sort of notice, warning, or recall, or otherwise alerted purchasers of the Product that the Product suffers from the Safety Defect.

## IV. Defendant Had a Duty to Disclose the Safety Defect

35. Defendant had a duty to disclose the Safety Defect to potential customers.

36. This duty existed regardless of the cause of the Safety Defect.

37. Plaintiff and the Class members needed to be informed prior to purchase that using the Product in a foreseeable manner and as directed could expose their children to physical harm, so they could make an informed decision about whether to purchase the Product.

38. A consumer does not care why the Safety Defect is occurring; what is relevant and material is that the Safety Defect is occurring, regardless of its cause.

39. Consequently, once Defendant was on notice that the Safety Defect was occurring in the Product, it had a duty to disclose this material information to consumers regardless of whether Defendant was aware of the causes.

## V. Defendant's Concealment of and Failure to Disclose the Safety Defect

40. Plaintiff and the Class members were not aware of the Safety Defect prior to their purchases of the Product. Instead, they reasonably expected the Product would be safe for ordinary use as a bed for children.

41. Defendant uniformly concealed and intentionally failed to disclose the Safety Defect to Plaintiff and the Class members prior to sale of the Product. Defendant's advertising and labeling of the Product did not disclose to Plaintiff and the Class members that the Product was subject to the Safety Defect.

42. Defendant's marketing and sale of the Product omitted material facts concerning the danger of injury associated with the use of the Product. Defendant's deceptive acts and practices include failing to warn consumers about the dangerous sharp edges of the Product.

43. It was especially easy for Defendant to mislead Plaintiff and the Class members about the dangers of the Product since the Product was only sold online. Consequently, consumers did not have an opportunity to examine tangible units of the Product before their purchases.

44. In conjunction with each Product sale, Defendant marketed, advertised, and warranted that the defective components of the Product were of merchantable quality fit for the ordinary purpose for which such goods were used and were free from defects. Defendant intended for customers to believe its representations and omissions about its beds being of a safe quality.

**VI. The Safety Defect Was Material to a Reasonable Consumer**

45. At all relevant times, the Safety Defect was "material" information for prospective purchasers because, among other reasons: (i) it poses an unreasonable safety hazard, and (ii) the presence of the Safety Defect would affect a reasonable consumer's decision as to whether s/he wanted to purchase a unit of the Product. When deciding which bed to purchase for their child, reasonable consumers place importance on safety and do not expect to buy beds that will endanger the physical and mental well-being of their children.

46. Defendant knew the Safety Defect was material and would affect Plaintiff's and the Class members' willingness to purchase the Product, or at a minimum would affect the price Plaintiff and the Class were willing to pay.

**VII. Plaintiff and the Class Members Relied on Defendant's Deceptive Conduct and Suffered Injury due to Defendant's Conduct**

47. In reliance on Defendant's misleading advertising and deceptive marketing practices for the Product, Plaintiff and the Class members reasonably believed that they were purchasing a bed that was free of dangerously-sharp edges.

48. If Plaintiff and the Class members had known about the Safety Defect, they would not have purchased the Product or would have paid less for it.

49. Plaintiff and the Class would not have purchased units of the Product

or would have paid less for the Product had the Safety Defect been disclosed prior to purchase.

50. In reality, neither Plaintiff nor any of the putative Class members received a bed that had the design or safety level they thought they were purchasing.

51. Plaintiff and the Class members paid for a safe Fun Twin Bed Product, but they received a Fun Twin Bed Product that suffered from the Safety Defect, dangerously-sharp edges. The Products that Plaintiff and the Class members purchased and received were worth less than the Products for which they paid.

52. As a direct and proximate result of Defendant's concealment and nondisclosure of the Safety Defect, Plaintiff and the Class (i) suffered damages in the amount of the full purchase price of the Product or, alternatively, the price premium they paid for the Product on account of Defendant's deceptive omissions; (ii) received beds which presented foreseeable risks of physical harm; (iii) suffered a loss of usefulness of the Product; (iv) suffered injury in fact; and (v) lost money or property.

53. By selling the Product with the Safety Defect, Defendant has profited, either directly or indirectly, by concealing the nature and extent of the Product's Safety Defects, which have enabled Defendant to sell the Product at a premium price.

54. Defendant has profited enormously from the sale of the Product, while Plaintiff and the Class members have incurred damages, including the price they paid to purchase the Product with the Safety Defect.

## CLASS ACTION ALLEGATIONS

55. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), Plaintiff brings this action individually and on behalf of a proposed class defined as follows:

> **The Class.** All persons in California who purchased the Product in California on or after October 6, 2021, for household use and not for resale or distribution.

56. Excluded from the Class are: (i) Defendant and its affiliates, employees, officers, and directors; (ii) any individual who received remuneration from Defendant in connection with that individual's use or endorsement of the Product; (iii) the Court, the Court's immediate family, and the Court staff; (iv) the attorneys of record in this case; and (v) any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures.

57. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal the Class should be expanded or otherwise modified.

58. Certification of Plaintiff's claims regarding the Safety Defect for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

59. **Numerosity.** The members in the proposed class are so numerous that individual joinder of all members is impracticable.

60. **Commonality and Predominance.** Questions of law and fact common to the class predominate over any questions affecting only individual class members. Such questions of law and fact common to Plaintiff and the Class include, without limitation:

i. whether Defendant was aware of the Safety Defect;

ii. when Defendant was aware of the Safety Defect;

iii. what the full extent of Defendant's knowledge of the Safety Defect was;

iv. whether a reasonable consumer would consider the Safety Defect "material" or "important" to their decision to purchase the Product;

v. whether Defendant uniformly failed to disclose the Safety Defect from prospective customers prior to purchase;

vi. whether Defendant had a duty to disclose the Safety Defect to

potential customers prior to purchase;

vii. whether Defendant actively concealed the Safety Defect;

viii. whether Defendant's conduct violated the UCL;

ix. whether Defendant's conduct violated the CLRA; and

x. whether the requested injunctive relief is appropriate and necessary to remedy Defendant's failure to disclose the Safety Defect.

61. **Typicality.** Plaintiff's claims are typical of the claims of the members of the proposed class. Plaintiff and all class members have been injured by the same wrongful practices of Defendant. Plaintiff's claims arise from the same practices and conduct that give rise to the claims of all class members and are based on the same legal theories.

62. **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the proposed class in that she has no interests antagonistic to those of the other proposed class members, and Plaintiff has retained attorneys experienced in consumer class actions and complex litigation as counsel.

63. **Superiority.** Plaintiff knows of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims is impracticable. Requiring each individual class member to file an individual lawsuit would unreasonably consume the amounts that may be recovered. Even if every class member could afford individual litigation, the adjudication of numerous claims would be unduly burdensome to the courts. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented herein, presents no

management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the class members. The prosecution of separate actions by individual class members may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party class members to protect their interests.

64. **Injunctive and Declaratory Relief.** Defendant has acted on grounds applicable to the Class as a whole so that final injunctive and declaratory relief concerning the Class as a whole are appropriate.

65. **Notice.** Plaintiff and her counsel anticipate that notice to the proposed Class will be effectuated through recognized, Court-approved notice dissemination methods, which may include United States mail, electronic mail, Internet postings, and/or published notice.

66. Defendant has, or has access to, address information for the Class members, which may be used for the purpose of providing notice of the pendency of this class action.

## CLAIMS FOR RELIEF

## FIRST CLAIM

### Strict Products Liability – Design Defect

### By Plaintiff on Behalf of the Class

67. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the paragraphs above as if fully set forth herein.

68. Plaintiff brings this claim for strict liability due to a design defect individually and on behalf of the Class against Defendant.

69. A design defect exists when the product at issue is built in accordance with its intended specifications, but the design itself is inherently defective.

70. To plead a cognizable claim for design defect, a plaintiff must ordinarily show (1) the product is placed on the market; (2) there is knowledge that

it will be used without inspection for defect; (3) the product proves to be defective; and (4) the defect causes injury.

71. Defendant designed, built, manufactured, constructed, marketed, advertised, promoted, and sold the Product (including the unit bought by Plaintiff) and its component parts which were intended by Defendant to be used for all purposes for which the Product is commonly or foreseeably used.

72. Defendant knew or should have known the Product was unsafe for its intended and/or foreseeable use by reason of the defects in its design as set forth herein (i.e., the Safety Defect), so that injuries to users were foreseeable to occur due to the Safety Defect when the Products were used in a manner in which they were intended to be used or in manners that were foreseeable.

73. At all times relevant hereto, the damages and injuries incurred by Plaintiff and the Class members were caused by Defendant in the following respects: (i) failing to utilize proper designs or procedures for the manufacture, assembly, and sale of the Product; (ii) failing to design the Product to be utilized safely for the intended use; (iii) failing to properly test the component parts of the Product after its manufacture prior to sale; (iv) designing and manufacturing the Product and its components knowing it is unreasonably dangerous; (v) failing to remove the Product from the marketplace; and (vi) failing to recall the Product from the purchaser and/or ultimate users.

74. At all relevant times hereto, the Product and its components were defectively designed, manufactured, assembled, and/or supplied and/or were in an unsafe condition, such that the Product put intended users at a foreseeable and severe risk of injury and/or death.

75. The risk of danger inherent in the design of the Product outweighed the benefit of the design. The defective design of the Product and its components created a risk of serious injury and/or death. Furthermore, there existed safer alternative product designs that were economically feasible. There existed no adverse

consequence to the Product which would result from implementation of an alternate design.

76. As a direct and legal result of the aforesaid acts, omissions, and defective product design, Plaintiff and the Class members incurred damage and Plaintiff's son was seriously injured. Plaintiff and her son suffered and will continue to suffer physical, emotional, and psychological injuries that required and will require treatment from hospitals, physicians, and other medical professionals, in an amount to be proven at the time of trial.

77. As a direct and legal result of the aforementioned defective product, Defendant is strictly liable in tort for the damages sustained by Plaintiff and the Class members as set forth herein.

78. Defendant consciously disregarded the rights of others, including but not limited to Plaintiff and the Class members, in that such Defendant consciously, wantonly, recklessly, and/or intentionally designed, manufactured, fabricated, assembled, tested or failed to test, inspected or failed to inspect, serviced or failed to service, repaired or failed to repair, failed to provide suitable warnings and/or instructions, distributed, advertised, and marketed the Product and its components in such a manner that such Defendant knew or should have known that there was a high probability that harm would result and that the Product was dangerous, hazardous, and unsafe for the use and purpose for which it was designed, marketed, advertised, promoted, and recommended.

## SECOND CLAIM

### Negligence

### By Plaintiff on Behalf of the Class

79. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the paragraphs above as if fully set forth herein.

80. Plaintiff brings this claim for negligence individually and on behalf of the Class against Defendant.

81. Defendant is engaged in the business of designing, manufacturing, assembling, inspecting, marketing, distributing, selling, and providing the Product by which Plaintiff and the Class members incurred harm.

82. Defendant owed Plaintiff and the Class members a legal duty to act with reasonable and ordinary care and to properly design, manufacture, assemble, inspect, market, distribute, sell, and provide the Product such that the foreseeable use of the Product would not be subjected to unreasonable dangers and hazards such as the Safety Defect.

83. Defendant negligently, carelessly, and/or recklessly failed to design, manufacture, assemble, inspect, market, distribute, sell, and provide the Product for the use and purpose for which it was intended when used as recommended and instructed by Defendant, for reasons including that the Product was subject to the Safety Defect.

84. Defendant knew, or in the exercise of reasonable care should have known, that the Product was not properly designed, manufactured, assembled, inspected, marketed, distributed, sold, and provided for the use and purpose for which it was intended, for reasons including that the Product was subject to the Safety Defect.

85. As a result of the negligent, careless, and/or reckless design, manufacture, assembly, inspection, marketing, distribution, sale, and provision of the Product, Defendant breached its duty to properly design, manufacture, assemble, inspect, market, distribute, sell, and provide the Product.

86. Defendant also breached its duty of care by negligently failing to timely and/or adequately warn Plaintiff and the Class members of the defective and unreasonably dangerous condition of the Product containing the Safety Defect, even after Defendant was, or should have been, fully aware of the material defects in the Product.

87. Plaintiff and the Class members used their units of the Product in a

reasonably foreseeable manner.

88. As a direct and proximate result of the negligent, careless, and/or reckless design, manufacture, assembly, inspection, marketing, distribution, sale, and provision of the Product by Defendant, Plaintiff and the Class members were injured and suffered damages. Furthermore, as a result of the foregoing, Plaintiff incurred physical and mental harm and economic damages and her son suffered egregious physical injuries and mental harm.

89. Defendant's negligent, careless, and/or reckless conduct was a substantial factor in causing the harms, injuries, and damages Plaintiff and the Class members suffered.

90. All of foregoing harms and injuries have caused, and will continue to cause, Plaintiff and the Class members to suffer special and general damages in an amount which will be stated at the time of trial according to proof.

91. As a direct and proximate result of Defendant's conduct, Plaintiff was required to and did hire professionals to examine, treat, and care for her son's injuries. The injuries and harm Plaintiff's son incurred remain and continue to persist. Consequently, Plaintiff and her son incurred and will in future continue to incur medical, and other related expenses in an amount according to proof at trial.

## THIRD CLAIM

### Violation of California's Unfair Competition Law

### CAL. BUS. & PROF. CODE § 17200 *et seq.*

### By Plaintiff on Behalf of the Class

92. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the paragraphs above as if fully set forth herein.

93. Plaintiff brings this claim for violation of the UCL individually and on behalf of the Class against Defendant.

94. California's UCL prohibits acts of "unfair competition," including any unlawful, unfair, fraudulent, or deceptive business act or practice as well as "unfair,

deceptive, untrue or misleading advertising." CAL. BUS. & PROF. CODE § 17200.

95. Defendant's failure to disclose the Safety Defect is likely to deceive a reasonable consumer and therefore constitutes a fraudulent or deceptive business practice.

96. Defendant's sale of the Product without disclosing the Safety Defect, and/or Defendant's failure to adequately investigate, disclose, and remedy the Safety Defect, offends established public policy and constitutes an unfair business practice. This injury is not outweighed by any countervailing benefits to consumers or competition.

97. Defendant's conduct is unlawful in that it violates numerous statutes, including the CLRA, California Civil Code sections 1709-10, and California Civil Code sections 1572-73 and constitutes common law fraudulent non-disclosure.

98. Plaintiff and the Class members have suffered injury in fact and have lost money and/or property as a result of Defendant's fraudulent, unfair, and/or unlawful business practices, in that as a result of Defendant violations of the UCL, Plaintiff and the Class members purchased units of the Product which they otherwise would not have purchased, or at a minimum, paid more for their units of the Product than they would have paid had Defendant not violated the UCL.

99. Plaintiff and the Class members reserve the right to allege other violations of law which constitute other unlawful business acts and practices. Such conduct is ongoing and continues to this date.

100. Under California Business and Professions Code section 17203, Plaintiff and the Class seek an order of this Court: (i) for injunctive relief requiring Defendant to repair and/or replace the Products they purchased with toddler beds that lack the Safety Defect; (ii) for injunctive relief requiring Defendant to disclose the Safety Defect on its website, in newspapers throughout the State of California, and through a notice mailed and/or emailed to all Class members; and (iii) for restitution of all monies paid to Defendant as a result of Defendant's violations of

the UCL. Plaintiff reserves the right to seek additional preliminary or permanent injunctive relief.

101. Pursuant to California Business and Professions Code section 17203, Plaintiff and the Class therefore seek an order requiring Defendant to cease the acts of unfair competition alleged herein, full restitution of all monies paid to Defendant as a result of its deceptive practices, interest at the highest rate allowable by law, and the payment of Plaintiff's attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure section 1021.5.

## FOURTH CLAIM

**Violation of California's Consumers Legal Remedies Act**

**CAL. CIV. CODE § 1750 *et seq.***

**By Plaintiff on Behalf of the Class**

102. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the paragraphs above as if fully set forth herein.

103. Plaintiff brings this claim for violation of the CLRA individually and on behalf of the Class against Defendant.

104. The CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient economical procedures to secure such protection." CAL. CIV. CODE § 1760.

105. Segal is a "person" under the CLRA. CAL. CIV. CODE § 1761(c).

106. Plaintiff and the putative Class members are "consumers" under the CLRA. § 1761(d).

107. The Product constitutes a "good" under the CLRA. § 1761(a).

108. Plaintiff's and the putative Class members' purchases of the Product are "transactions" under the CLRA. § 1761(e).

109. Defendant's false and misleading representations and omissions and other policies, acts, and practices were designed to, and did, induce the purchase and

use of the Product for personal, family, or household purposes by Plaintiff and the Class members.

110. The CLRA prohibits a list of "unfair methods of competition and unfair or deceptive acts or practices" from being "undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." CAL. CIV. CODE § 1770. These prohibitions specifically include:

i. "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," § 1770(a)(5);

ii. "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," § 1770(a)(7);

iii. "Advertising goods or services with intent not to sell them as advertised," § 1770(a)(9); and

iv. "Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not," § 1770(a)(16).

111. Defendant violated section 1770(a)(5), (7), (9), and (16) by selling the Product to Plaintiff and the Class members through the deceptive material omissions described above.

112. Defendant's uniform and material omissions regarding the safety risks and danger of the Product were likely to deceive reasonable consumers.

113. Defendant knew, or should have known through the exercise of reasonable care, that its material omissions were misleading and likely to deceive reasonable consumers and cause them to purchase the Product.

114. Defendant's omissions were material because a reasonable consumer would consider them important in deciding whether to purchase the Product.

115. Defendant's conduct is malicious, fraudulent, and wanton in that

Defendant intentionally misled and withheld material information from consumers, including Plaintiff and the Class, to increase the sales of the Product.

116. Plaintiff and the Class members would not have purchased the Product, but for Defendant's misleading omissions about the Product. Plaintiff and the Class members could not have reasonably avoided such injury. Plaintiff and the Class members were misled and unaware of the existence of facts that Defendant suppressed and failed to disclose, and Plaintiff and the Class members would not have purchased the Product and/or would have purchased it on different terms (including at a lower price) had they known the truth.

117. Plaintiff and the Class members were injured in fact and lost money as a result of Defendant's deceptive material omissions. Plaintiff and the Class members suffered harm as a result of Defendant's violations of the CLRA because they relied on Defendant's material omissions when deciding to purchase the Product.

118. Defendant profited from selling the falsely and deceptively advertised Products to unwary consumers, including Plaintiff and the Class members.

119. Pursuant to California Civil Code section 1782, on approximately October 6, 2025, and March 12, 2026, Plaintiff notified Segal in writing of its particular violations of California Civil Code section 1770 and demanded that Segal rectify the actions described above by providing monetary relief, agreeing to be bound by its legal obligations, and giving notice to all affected consumers of its intent to do so.

120. Segal has failed to rectify or agree to rectify at least some of the violations associated with actions detailed above and give notice to all affected consumers within 30 days of receipt of the section 1782 notice. Thus, Plaintiff seeks actual damages and punitive damages for violation of the CLRA.

121. **No adequate remedy at law.** Plaintiff has no adequate remedy at law. Without equitable relief, Defendant's unfair, deceptive, untrue, and misleading

practices will continue to harm Plaintiff and the Class.

122. Pursuant to California Civil Code section 1780(a)(2), Plaintiff seeks a Court order enjoining the above-described wrongful acts and practices that violate section 1770.

123. Plaintiff and the Class members also seek declaratory relief, restitution and/or disgorgement, and attorneys' fees, costs, and expenses pursuant to California Civil Code sections 1780 and 1781, and such other and further relief as the Court may deem just and proper.

## FIFTH CLAIM

### Fraudulent Non-Disclosure

### By Plaintiff on Behalf of the Class

124. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the paragraphs above as if fully set forth herein.

125. Plaintiff brings this claim for fraudulent non-disclosure individually and on behalf of the Class against Defendant.

126. Defendant knew about the Safety Defect during the relevant time period.

127. The Safety Defect is "material" information which a reasonable consumer would consider to be important when deciding to purchase the Product.

128. Under California law, Defendant had a duty to disclose the material Safety Defect to Plaintiff and the Class members prior to their purchases of the Product because, at a minimum, Defendant had exclusive and/or superior knowledge of the Safety Defect that was not known to or reasonably discoverable by Plaintiff and the Class.

129. Defendant intentionally concealed and failed to disclose the Safety Defect to Plaintiff and the Class prior to their purchases of the Product in order to induce Plaintiff and the Class to purchase units of the Product.

130. Plaintiff and the Class justifiably relied on Defendant's non-disclosure

and concealment and had the Safety Defect been disclosed prior to purchase, Plaintiff and the Class would not have purchased the Product, nor would they have paid as much money as they did for the Product.

131. As a direct and proximate result of Defendant's non-disclosure and concealment of the Safety Defect, Plaintiff and the Class have suffered actual damages in an amount not presently known, but which will include, among other things, their "out of pocket" losses.

132. Plaintiff and the Class further seek a constructive trust to prevent unjust enrichment and to compel restoration of property (money) to Plaintiff and the Class which Defendant acquired through fraud.

133. Plaintiff also seeks injunctive relief (i) requiring Defendant to repair and/or replace the Product with a toddler bed that lacks the Safety Defect; and (ii) requiring Defendant to disclose the Safety Defect on its website, in newspapers throughout the State of California, and through a notice mailed and/or emailed to all Class members. Plaintiff further reserves the right to seek additional preliminary or permanent injunctive relief.

134. Plaintiff and the Class are informed and believe and thereon allege that Defendant undertook the aforesaid illegal acts intentionally or with conscious disregard of the rights of Plaintiff and the Class, and did so with fraud, oppression, and malice. Therefore, Plaintiff and the Class also seek to recover punitive damages from Defendant in an amount that will be shown by proof at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the members of the Class, respectfully requests the Court to enter an Order:

A. certifying the proposed Class under Rule 23(a), (b)(2), and (b)(3) as set forth above; appointing Plaintiff as the representative of the Class; and appointing Plaintiff's counsel as counsel for the Class;

B. declaring that Defendant is financially responsible for notifying the

Class members of the pendency of this suit;

C. declaring that Defendant has committed the violations of law alleged herein;

D. providing for any and all injunctive relief the Court deems appropriate;

E. awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

F. providing for any and all equitable monetary relief the Court deems appropriate, including restitution and disgorgement of all ill-gotten gains and the imposition of a constructive trust upon, or otherwise restricting the proceeds of, Defendant's ill-gotten gains, to ensure that Plaintiff and members of the proposed Class have an effective remedy;

G. awarding punitive damages in accordance with proof and in an amount consistent with applicable precedent;

H. awarding Plaintiff reasonable costs and expenses of suit, including attorneys' fees;

I. awarding pre- and post-judgment interest to the extent the law allows; and

J. providing such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

Respectfully submitted,

Date: September 21 , 2026

**DOGRA LAW GROUP PC**

By: ______________________

Shalini Dogra (SBN 309024)
*shalini@dogralawgroup.com*
2219 Main Street, Unit 239
Santa Monica, California 90405
Telephone: (747) 234-6673
Facsimile: (310) 868-0170

**REESE LLP**
George V. Granade (SBN 316050)
*ggranade@reesellp.com*
235 Peachtree Street Northeast
Suite 400
Atlanta, Georgia 30303-1400
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

**REESE LLP**
Michael R. Reese (SBN 206773)
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Plaintiff Amanda Johnson-Zetterström and the Proposed Class*

Shalini Dogra (State Bar No. 309024)
*shalini@dogralawgroup.com*
**DOGRA LAW GROUP PC**
2219 Main Street, Unit 239
Santa Monica, California 90405
Telephone: (747) 234-6673
Facsimile: (310) 868-0170

George V. Granade (State Bar No. 316050)
*ggranade@reesellp.com*
**REESE LLP**
235 Peachtree Street Northeast, Suite 400
Atlanta, Georgia 30303-1400
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

Michael R. Reese (State Bar No. 206773)
*mreese@reesellp.com*
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Plaintiff Amanda Johnson-Zetterström and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

AMANDA JOHNSON-ZETTERSTRÖM, *individually and on behalf of all others similarly situated*,

Plaintiff,

v.

SEGAL USA INC.,

Defendant.

Case No. 2:26-cv-04005-FLA-PVC

**AFFIDAVIT OF SHALINI DOGRA PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1780(d)**

Pursuant to 28 U.S.C. § 1746, I, Shalini Dogra, declare as follows:

1. I am licensed to practice law in the State of California. I am an attorney at the law firm of Dogra Law Group PC, one of the counsel of record for plaintiff and the proposed class in the above-captioned action.

2. Defendant Segal USA Inc. has done, and is doing, business in Los Angeles County, California. Such business includes the marketing, promotion, and sale of the Fun Twin Bed at issue.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 21, 2026, at Santa Monica, California.

Shalini Dogra